Michael G. Spector - Bar No. 145035
Vicki L. Schennum (Of Counsel) - Bar No. 159628
**LAW OFFICES OF MICHAEL G. SPECTOR**
2677 North Main Street, Suite 800
Santa Ana, California 92705
Telephone: (714)835-3130
Facsimile:  (714)558-7435
*Email - mgspector@aol.com*
*Email - schennumlaw@gmail.com*

[Proposed] Attorneys for the Debtor and Debtor-in-Possession,
J.C. Management, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re | )  Bk. No. 8:11-bk-16249-SC |
| | )  Chapter 11 |
| **J. C. MANAGEMENT, INC.,** | )  **MOTION FOR ORDER GRANTING AN EXTENSION OF THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE ITS PLAN AND DISCLOSURE STATEMENT AND SOLICIT ACCEPTANCES OF A PLAN OF REORGANIZATION PURSUANT TO BANKRUPTCY CODE SECTION 1121(d); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF JAMES R. CUNNINGHAM IN SUPPORT THEREOF** |
| Debtor-in-Possession. | ) |
| | )  Date:   August 25, 2011 |
| | )  Time:   10:00 a.m. |
| | )  Ctrm:  5C, 5th Floor |
| | )          411 W. Fourth Street |
| | )          Santa Ana, CA 92701 |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE;**

**THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL PARTIES IN INTEREST:**

J. C. Management, Inc., debtor and debtor in possession ("Debtor") in the above-referenced

Chapter 11 case, by and through its undersigned counsel, hereby moves this Court (the "Motion") for

an order granting extensions of the exclusivity periods during which only the Debtor may file a plan and

disclosure statement as well as the solicitation period during which only the Debtor may solicit

acceptances of a plan of reorganization pursuant to Bankruptcy Code Section 1121(d).

1       This Motion is based on this Notice of Motion, the appended Memorandum of Points and

2  Authorities and the Declaration of James R. Cunningham (the "Cunningham Declaration") and such

3  other oral and documentary evidence as may be properly before this Court at the hearing on the Motion.

4  In further support of the Motion, the Debtor respectfully represents as follows:

5                              **I.**

6                   **RELIEF REQUESTED**

7       1.      Bankruptcy Code Section 1121(b) provides for an initial 120-day period after the Petition

8  Date (as that term is defined below) within which the Debtor has an exclusive right to file a plan (the

9  "Plan Period").  Bankruptcy Code Section 1121(c) further provides for an initial 180-day period after

10  the Petition Date (the "Solicitation Period") within which the Debtor has the exclusive right to solicit

11  and obtain acceptances of a plan filed by the Debtor during the Plan Period.  The Plan Period is currently

12  set to expire on August 29, 2011 and the Solicitation Period is currently set to expire on October 28,

13  2011.

14       2.      By this Motion, the Debtor requests entry of an order extending: a)  the Plan Period  to

15  October 28, 2011, a date that is sixty (60) days after the expiration of the current Plan Period ; and the

16  Solicitation Period to January 11, 2012[1], a date that is seventy-five (75) days after the expiration of the

17  current Solicitation Period .  The Plan Period and the Solicitation Period are together referred to herein

18  as the "Exclusivity Periods".  If granted, the extension of the Exclusivity Periods will be without

19  prejudice to (a) the right of the Debtor to seek further extensions of the Exclusivity Periods ; or (b) the

20  right of any party in interest to seek to reduce the Exclusivity Periods , for cause.

21       3.      As set forth herein, extensions of the Exclusivity Periods will allow the active issues and

22  disputes in this case to be resolved and eliminate the chance of the Debtor being subject to a chaotic

23  environment where there are competing plans of reorganization.  The relief sought herein will allow the

24  Debtor's estate (the "Estate") to preserve and maintain the opportunity for an orderly, efficient and cost-

25  effective resolution of this case.

26  ///

27

28      [1] A sixty (60) day extension of the Solicitation Period would expire on December 27, 2011.
Thus, given that this date falls during the holiday season, the Debtor is seeking a seventy-five (75) day
extension of the Solicitation Period,.

## II.

## FACTUAL BACKGROUND AND BASIS FOR RELIEF

**A.    Case Commencement**

4.    On May 1, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code.  No trustee has been appointed and Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108.  A Creditor's Committee has been appointed in the Debtor's case. [Cunningham Declaration ¶ 2].

**B.    Description of the Debtor's Business and Events Leading to the Bankruptcy Filing**

5.    The Debtor owns and operates seven (7) Arby's Restaurants.  The Debtor was incorporated in 1996 and continues to operate in good standing with the California Secretary of State. The Debtor is presently operating and must continue to operate to successfully reorganize. [Cunningham Declaration ¶ 3].

6.    The Debtor has operated Arby's restaurants since 1996.  Beginning in 2007 through 2010, the Debtor sales decreased by about 35% due to certain issues related to the quality of the products supplied by Arby's Franchise Trust ("AFT") and related issues.  In addition, AFT appeared to be more focused on its Wendy's franchises to the detriment of owners of Arby's franchise restaurants.  In addition, AFT imposed other restrictions, including but not limited to, terminating local television advertisements.  [Cunningham Declaration ¶ 4].

7.    The Debtor does not believe that AFT has not fulfilled it contractual obligations to the Debtor under their various License Agreements.  Despite its failure to fulfill its contractual obligations to the Debtor, AFT continues to charge royalty and other dues to the Debtor.  On April 1, 2011, AFT sent correspondence to the Debtor demanding the sum of $301,141.82 be paid on or before May 2, 2011 and threatening certain legal action, including termination of the License Agreements, if this sum was not paid by this date.  In order to insure the continued employment of its over 100 employees and to preserve the value of the business for its creditors, the Debtor filed its voluntary Chapter 11 petition on May 1, 2011.  [Cunningham Declaration ¶ 5].

///

**C.      The Debtor's Progress Toward it Reorganization Goals**

8.      In late June of 2011, the Debtor contacted current Chapter 11 counsel to assist in getting its Chapter 11 case on track.  The Debtor's Chapter 11 case had been pending for close to two (2) months and was at serious risk of being dismissed or converted to one under Chapter 7.  Prior counsel had yet to obtain approval of: a) the Debtor's use of cash collateral; b) the payment of pre-petition employee wages; c) the payment of insiders' compensation; and d) his employment.  In addition, the Office of the United States Trustee (the "OUST") had filed a motion to dismiss or convert the Debtor's case for failure to comply with the approval of virtually any of the guidelines of the OUST (the "Dismiss/Convert Motion").  The initial compliance package was seriously deficient and the Debtor had not filed its monthly operating reports.  [Cunningham Declaration ¶ 6].

9.      Current Chapter 11 counsel took immediate action to remedy these defaults.  Current Chapter 11 counsel immediately commenced negotiations with the Debtor's secured lender for its consent of the Debtor's use of cash collateral which was approved by Court order entered on July 7, 2011 (docket number 61) and obtained Court approval of for the payment of pre-petition wages by order entered on July 7, 2011 (docket number 62).  [Cunningham Declaration ¶ 7].

10.     Chapter 11 counsel undertook an immediate and comprehensive review of the documentation filed with the OUST and began working with the Debtor and the OUST to complete all compliance issues, which included,, preparation of: a) seven(7) real property questionnaires; b) the Debtor's major issues and timetable report; c) cash flow projections; and d) all other information required by the OUST to complete the initial compliance package.  In addition, current Chapter 11 counsel assisted the Debtor in preparing, filing and serving three (3) notices of setting insider compensation as well as its application for order approving its employment. [Cunningham Declaration ¶ 8].

11.     The Debtor took affirmative action to complete other compliance issues which included filing is May 2011 Monthly Operating Report with the OUST.  Additionally, the Debtor filed its June 2011 Monthly Operating Report and paid the quarterly fee due to the OUST.  [Cunningham Declaration ¶ 9].

///

12.     As a result of these efforts, the OUST voluntarily withdrew its Dismiss/Convert Motion (docket number 66). [Cunningham Declaration ¶ 10].

13.     This Chapter 11 case was recently reassigned to the Honorable Scott C. Clarkson and the first status conference in this case will be heard on August 4, 2011. Thus, the Court will not have even set a claims bar date in this case until this hearing. The Plan will be better formulated once the Debtor is aware of the amount and scope of the claims filed. It is anticipated that the Court will set the claims bar date for early October 2011. [Cunningham Declaration ¶ 11].

14.     Since the Petition Date, the Debtor has worked diligently towards negotiating and formulating a plan of reorganization. These efforts include:

a.     Filing an application for order authorizing employment of the Law Offices of Michael G. Spector, Chapter 11 counsel for the Debtor;

b.     Working with the Debtor's landlords regarding modification of the long-term real property leases.

c.     Preparing, filing and serving a motion for order authorizing the extension of time to assume or reject non-residential real property leases for the seven (7) Arby's restaurants operated by the Debtor.

d.     Efforts to increase sales, including implementing marketing strategies that would open new income streams and expand the Debtor's current market share.

e.     The Debtor is paying its post-petition obligations as they come due.

[Cunningham Declaration ¶ 12].

15.     Once the Debtor retained new Chapter 11 counsel on June 24, 2011, the Debtor and its counsel have remained in constant communication with the Debtor's creditors to keep them properly advised of the pendency of the Chapter 11 case and of major developments. The Debtor has responded, and will continue to respond, to inquiries from creditors regarding the status and developments of this Chapter 11 case. At all possible opportunities, creditors and parties in interest have been provided with all information regarding the Debtor's reorganization efforts. [Cunningham Declaration ¶ 13].

///

///

16.     The Debtor and its counsel are in the process of completing an exhaustive analysis of the financial performance of each restaurant to determine appropriate actions to insure future profitability. [Cunningham Declaration ¶ 14].

17.     The Debtor is currently investigating the propriety of bringing an action against AFT, including, but not limited to, breach of the various License Agreements between the Debtor and AFT. The Debtor and its counsel need additional time to evaluate these claims and to work with AFT on a possible settlement.   [Cunningham Declaration ¶ 15].

**WHEREFORE**, the Debtor respectfully requests entry of an order extending: a) the Plan Period to October 28, 2011, a date that is sixty (60) days after the expiration of the current Plan Period ; and the  Solicitation Period to January 11, 2012, a date that is seventy-five (75) days after the expiration of the current Solicitation Period.  If granted, the extension of the Exclusivity Periods will be without prejudice to (a) the right of the Debtor to seek further extensions of the Exclusivity Periods ; or (b) the right of any party in interest to seek to reduce the Exclusivity Periods, for cause.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## GOOD CAUSE EXISTS FOR THIS COURT TO

4

## EXTEND THE EXCLUSIVE PERIODS

5 **A.      The Exclusive Periods May Be Extended for "Cause"**

6          18.      Pursuant to Bankruptcy Code Section 1121(b)[2], a debtor has the exclusive right to file

7 a plan of reorganization for a period of 120 days after the petition date.  If a debtor files a plan within

8 the 120-day exclusivity period, Bankruptcy Code Section 1121(c)(3)[3] provides sixty (60) additional days

9 during which the debtor has the exclusive right to solicit votes with respect to such plan.  The purpose

10 of the exclusive periods is to permit debtors in possession time post-petition to stabilize their operations,

11 formulate a reorganization plan and negotiate with creditors based on the theory that the debtor is in the

12 best position, given its knowledge of the business and  the creditor base, to propose a workable plan.

13 See, In re Clamp-All Corp., 233 B.R. 198, 207 (Bankr. D. Mass. 1999); see also, Gaines v. Perkins (In

14 re Perkins), 71 B.R. 294, 297-98 (W.D. Tenn. 1987); see also, H.R. Rep. No. 95-595, at 231, 232

15 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191.

16          19.      Under Bankruptcy Code Section 1121(d), subject to specified limitations, the Court has

17 discretion to extend the Exclusive Periods for "cause".  Specifically, Section 1121(d) provides that:

18           (1) Subject to paragraph (2), on request of a party in interest made within
             the respective periods specified in subsections (b) and (c) of this section
19           and after notice and a hearing, the court may for cause reduce or increase
             the 120-day period or the 180-day period referred to in this section.
20
             (2)   (A) The 120-day period specified in paragraph (1) may not be
21           extended beyond a date that is 18 months after the date of the order for
             relief under this chapter.
22

23          [2]      Bankruptcy Code Section 1121(b) provides the "[e]xcept as otherwise provided in this
24 section, only the debtor may file a plan until after 120 days after the date of the order for relief under this
chapter."

25          [3]      Bankruptcy Code Section 1121(c)(3) provides that:
26           [a]ny party in interest, including the debtor, the trustee, a creditors'
             committee, an equity security holders' committee, a creditor, an equity
27           security holder, or any indenture trustee, may file a plan if and only if . . .
             .
28                 (3) the debtor has not filed a plan that has been accepted, before
             180 days after the date of the order for relief under this chapter, by each
             class of claims or interests that is impaired under the plan.

1                (B) The 180-day period specified in paragraph (1) may not be

2 extended beyond a date that is 20 months after the date of the order for
relief under this chapter.

3

11 U.S.C. 1121(d).

4

       20.     The Bankruptcy Code does not define the "for cause" standard that is set forth in Section

5

2210(d)(1), but the legislative history and case law indicate that bankruptcy courts should use their

6

discretion to promote the orderly, consensual and successful reorganization of a debtor's financial

7

affairs.  See, 203 North LaSalle Street P'ship v. Bank of Am. Nat'l Ass'n, No. 99 C 7110 WL 1206619,

8

at *4 (N.D. Ill.  Dec 13, 1999) ("[T]he Code commits decisions on extending the exclusivity period to

9

the discretion of the bankruptcy court."); 140 Cong. Re. H. 10764 (Oct. 4, 1994) ("Exclusivity is

10

intended to promote an environment in which the debtor's business may be rehabilitated and a

11

consensual plan may be negotiated."); see also, In re All Seasons Indus., Inc., 121 B.R. 1002, 1006

12

(Bankr. N. D. Ind. 1990) ("One of the most important reasons for extending the debtor's period of

13

exclusivity is to give the Chapter 11 process of negotiation and compromise an opportunity to be

14

fulfilled, so that a consensual plan can be proposed and confirmed without opposition.")

15

       21.     Courts have identified several key factors relevant to determine whether cause exists

16

under Bankruptcy Code Section 1121(d), including:

17

      a.     The size and complexity of a debtor's case;

18

      b.     the existence of good faith progress toward reorganization;

19

      c.     whether the debtor is seeking to extend exclusivity to pressure creditors "to accede to

20

            [the debtors'] reorganization demands";

21

      d.     the existence of an unresolved contingency (e.g., ongoing negotiations that will not

22

            conclude within the exclusive periods, but where the subject matter of the negotiations

23

            is vital to reorganization and, if successful, the negotiations would likely enable the

24

            debtor to file a successful plan of reorganization); and

25

      e.     whether the debtor is paying its bills as they come due.

26

Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R. 639, 643-44 (B.A.P. 8th Cir,.

27

2003) ("As always, we emphasize that these are only factors, not all of which are relevant in every case

28

. . . [i]t is within the discretion of the bankruptcy court to decide which factors are relevant and give the

1    appropriate weight to each"); see also, H.R. Rep. No. 95-595, at 231, 232 (1978) reprinted in 1978

2    U.S.C.C.A.N. 5963, 6191 ("The court is given the power, though, to increase or reduce the 120-day

3    period depending on the circumstances of the case.)

4         22.    The decision of whether or not to grant a request to extend or shorten the exclusivity

5    period lies within the sound discretion of the bankruptcy judge. In re Gibson & Cushman, 101 B.R. 405,

6    409 (D.C. E.D.N.Y. 1989). The "cause" standard referred to in section 1121 has been referred to as a

7    general standard that allows the bankruptcy court "maximum flexibility to suit various types of

8    reorganization proceedings." In re Public Service Company of New Hampshire, 88 B.R. 521, 534

9    (Bankr. D. N.H. 1988).

10        23.    Since the enactment of the Bankruptcy Code, Bankruptcy Courts have consistently

11   considered the following criteria in determining whether "cause" exists for an extension of a debtor's

12   exclusivity periods: (1) the complexity of the debtor's case; (2) the progress of the debtor's case in the

13   first one hundred and twenty days of the case; (3) whether the debtor is requesting an extension of the

14   exclusivity period in good faith and not for the purpose of pressuring creditors to exceed to plan terms;

15   and (4) if the debtor has properly administered its Chapter 11 case. As set forth in the Declaration of

16   James R. Cunningham, cause exists to grant the Debtor the requested extensions of the Exclusivity

17   Periods.

18        24.    Courts have found cause for extending the exclusivity periods where the complexity of

19   the case causes difficulty in formulating a plan of reorganization, and where the debtor has made

20   substantial progress in the case which is critical to successful reorganization. See, In re Highland Park

21   Assoc's. Ltd., Partnership I, 130 B.R. 55, 60 (Bankr. N.D. Ill. 1991); In re Crescent Mfg. Co., 122 B.R.

22   979, 982 (Bankr. N.D. Ohio 1990); In re Pine Run Trust, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986).]

23        25.    When the question of exclusivity is entertained, complexity in Chapter 11 cases is

24   commonly equated with size. [See, e.g., In re Texaco, Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).]

25   But neither the language of the statute nor the Congressional commentary which preceded its enactment

26   imply that this construction was the intent of the drafters. [See, H.R. Rep. No. 595, 95th Cong. 1st Sess.

27   406 (1977), reprinted in U.S.C.A.A.N. 5963, 6362 ("Cause might include an unusually large or

28   unusually small case . . .") (emphasis added)]. Instead, the congressional intent, and the focus of most

1    courts, appears to be on a variety of factors, such as those outlined above. <u>See</u>, <u>e.g.</u>, <u>In re Trainer's, Inc.</u>

2    17 B.R. 246 (Bankr. E.D. Pa. 1982) ("cause" for extension was present when the debtor had made

3    substantial efforts to sell its main asset, was paying current expenses as they came due, and needed

4    additional time to conclude negotiations for sale of the asset)].

5    **B.    Cause Exists to Extend the Exclusive Periods**

6       26.    As set forth above and in the attached Cunningham Declaration, the Debtor has worked

7    extremely hard to both improve profitability of its business and to formulate a business plan which will

8    support a successful reorganization.  The Debtor has not basked under the protection of the automatic

9    stay, but rather, in the short period of time this case has been pending, the Debtor has taken several

10   affirmative steps progressing toward confirmation of a plan of reorganization.

11       **1.    Complexity of the Debtor's Case**

12       27.    As set forth herein, through no fault of the Debtor, this case did not get off to a great start.

13   Once new Chapter 11 counsel was retained, the case was put back on track.  Unfortunately, during this

14   time, proactive efforts to resolve issues with creditors and efforts to propose a consensual plan of

15   reorganization have only recently been started.

16       28.    The Debtor has seven (7) locations and seven (7) different landlords.  The Debtor and

17   its counsel are now engaged in settlement discussions with these landlords with the goal of obtaining

18   the landlords' consent to modification of these leases.

19       29.    Additionally, the Debtor has obtained the consent of its secured creditor for use of cash

20   collateral.  Now that this issue is resolve, the Debtor shall commence negotiations for a consensual

21   modification of the treatment of this creditors secured claims under the Debtor's Plan.

22       30.    Finally, the Debtor has over $2.8M in unsecured debt held by multiple creditors.  The

23   Debtor is in the process of completing its financial projections which will be the foundation presentation

24   of its Plan.

25       **2.    The Debtor's Progress in this Chapter 11 Case.**

26       31.    Since retaining new Chapter 11 counsel in late June, 2011, the Debtor has made great

27   progress toward reorganization, including, but not limited to: a) obtaining the necessary consent for use

28   of cash collateral; b) employment of Chapter 11 counsel; c) Court approval for the payment of pre-

1  petition wages; d) obtaining approval for the payment of insider compensation; d) commencement of

2  negotiations with landlords; e) commencement of analysis of issues related to litigation against AFT;

3  f) successfully responded to the OUST's Dismiss/Convert Motion resulting in its voluntary withdrawal;

4  and g) undertaken efforts to stabilize and improve income and reducing operating expenses.

5       32.     The Debtor has made progress in its reorganization efforts.  The Debtor has not basked

6  under the protection of the automatic stay, but rather, in the short time this case has been pending, the

7  Debtor has taken several affirmative steps toward resolution of this case and payment of allowed claims.

8       **3.     The Debtor's Request to Extend the Exclusivity Periods is Made in Good Faith.**

9       33.     As set forth in the Cunningham Declaration, the Debtor has acted in good faith

10 throughout the pendency of this case.  There are legitimate grounds for this request, not the least of

11 which being that the Debtor did not receive good counsel at the beginning of this case.  When new

12 counsel was retained, immediate efforts were undertaken to insure that the Debtor's case was positioned

13 for a successful reorganization.

14      34.     Moreover, given that the Debtor's Chapter 11 case was reassigned to this Honorable

15 Court, the first status conference in this matter will not be held until August 4, 2011.  At this hearing,

16 counsel for the Debtor shall request a claims bar date for late October, 2011.  Only after the passing of

17 the claims bar date will the Debtor have a complete understanding of the claims to be asserted against

18 the Estate.

19      **4.     The Debtor Has Properly Administered its Chapter 11 Case**

20      35.     The Debtor has complied with all requirements of the Bankruptcy Code, the Local

21 Bankruptcy Rules, and the requirements of the Office of the United States Trustee.  Furthermore, the

22 Debtor is diligently working towards negotiations with creditors and maintaining asset value.  These

23 factors provide firm ground upon which the Court may find that sufficient cause exists to extend the

24 Exclusivity Periods.

25 ///

26 ///

27 ///

28 ///

Extend Exclusivity Motion 8-25-11.wpd                    11

## II.

## CONCLUSION

36.    For all the foregoing reasons, the Debtor respectfully requests entry of an order extending: a) the Plan Period  to October 28, 2011, a date that is sixty (60) days after the expiration of the current Plan Period ; and the  Solicitation Period to January 11, 2012[4], a date that is seventy-five (75) days after the expiration of the current Solicitation Period.  If granted, the extension of the Exclusivity Periods will be without prejudice to (a) the right of the Debtor to seek further extensions of the Exclusivity Periods ; or (b) the right of any party in interest to seek to reduce the Exclusivity Periods, for cause.

Respectfully submitted,

**LAW OFFICES OF VICKI L. SCHENNUM**

Dated: August 3, 2011          By:          /s/ Vicki L.  Schennum
                                        Michael G. Spector
                                        Vicki L. Schennum (Of Counsel)
                                        [Proposed] Attorneys for J. C. Management, Inc.,
                                        Debtor and Debtor in Possession

---

[4] A sixty (60) day extension of the Solicitation Period would expire on December 27, 2011.  Thus, given that this date falls during the holiday season, the Debtor is seeking a seventy-five (75) day extension of the Solicitation Period,.

## <u>DECLARATION OF JAMES R. CUNNINGHAM</u>

I, James R. Cunningham declare as follows:

1.      I am the President of J. C. Management, Inc., Debtor and Debtor-in-Possession in the above-referenced Chapter 11 case ("Debtor"). I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto. I am also personally familiar with, and am custodian of, the records of the Debtor as they pertain to the financial records set forth herein. The records of the Debtor are made by employees of the Debtor who report to me and who have a business duty to enter the records of the Debtor accurately and at or near the time of the event which they record.

2.      On May 1, 2011 the Debtor filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code. The Debtor is continuing in the operation and management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. A Creditor's Committee has been appointed in the Debtor's case.

3.      The Debtor owns and operates seven (7) Arby's Restaurants. The Debtor was incorporated in 1996 and continues to operate in good standing with the California Secretary of State. The Debtor is presently operating and must continue to operate to successfully reorganize.

4.      The Debtor has operated Arby's restaurants since 1996. Beginning in 2007 through 2010, the Debtor sales decreased by about 35% due to certain issues related to the quality of the products supplied by Arby's Franchise Trust ("AFT") and related issues. In addition, AFT appeared to be more focused on its Wendy's franchises to the detriment of owners of Arby's franchise restaurants. In addition, AFT imposed other restrictions, including but not limited to, terminating local television advertisements.

5.      The Debtor does not believe that AFT has not fulfilled it contractual obligations to the Debtor under their various License Agreements. Despite its failure to fulfill its contractual obligations to the Debtor, AFT continues to charge royalty and other dues to the Debtor. On April 1, 2011, AFT sent correspondence to the Debtor demanding the sum of $301,141.82 be paid on or before May 2, 2011 and threatening certain legal action, including termination of the License Agreements, if this sum was not paid by this date. In order to insure the continued employment of its over 100 employees and to

///

preserve the value of the business for its creditors, the Debtor filed its voluntary Chapter 11 petition on May 1, 2011.

**C.      The Debtor's Progress Toward it Reorganization Goals**

6.      In late June of 2011, the Debtor contacted current Chapter 11 counsel to assist in getting its Chapter 11 case on track.  The Debtor's case had been pending for close to two (2) months and was at serious risk of being dismissed or converted to one under Chapter 7.  Prior counsel had yet to obtain approval of: a) the Debtor's use of cash collateral; b) the payment of pre-petition employee wages; c) the payment of insiders' compensation; and d) his employment.  In addition, the Office of the United States Trustee (the "OUST") had filed a motion to dismiss or convert the Debtor's case for failure to comply with the approval of virtually any of the guidelines of the OUST (the "Dismiss/Convert Motion").  The initial compliance package was seriously deficient and the Debtor had not filed its monthly operating reports.

7.      Current Chapter 11 counsel took immediate action to remedy these defaults.  Current Chapter 11 counsel immediately commenced negotiations with the Debtor's secured lender for its consent of the Debtor's use of cash collateral which was approved by Court order entered on July 7, 2011 (docket number 61) and obtained Court approval of for the payment of pre-petition wages by order entered on July 7, 2011 (docket number 62).

8.      Chapter 11 counsel undertook an immediate and comprehensive review of the documentation filed with the OUST and began working with the Debtor and the OUST to complete all compliance issues, which included,, preparation of: a) seven(7) real property questionnaires; b) the Debtor's major issues and timetable report; c) cash flow projections; and d) all other information required by the OUST to complete the initial compliance package.  In addition, current Chapter 11 counsel assisted the Debtor in preparing, filing and serving three (3) notices of setting insider compensation as well as its application for order approving its employment.

9.      The Debtor took affirmative action to complete other compliance issues which included filing is May 2011 Monthly Operating Report with the OUST.  Additionally, the Debtor filed its June 2011 Monthly Operating Report and paid the quarterly fee due to the OUST.

///

10. As a result of these efforts, the OUST voluntarily withdrew its Dismiss/Convert Motion (docket number 66).

11. This Chapter 11 case was recently reassigned to the Honorable Scott C. Clarkson and the first status conference in this case will be heard on August 4, 2011. Thus, the Court will not have even set a claims bar date in this case until this hearing. The Plan will be better formulated once the Debtor is aware of the amount and scope of the claims filed. It is anticipated that the Court will set the claims bar date for early October 2011.

12. Since the Petition Date, the Debtor has worked diligently towards negotiating and formulating a plan of reorganization. These efforts include:

a. Filing an application for order authorizing employment of the Law Offices of Michael G. Spector, Chapter 11 counsel for the Debtor;

b. Working with the Debtor's landlords regarding modification of the long-term real property leases.

c. Preparing, filing and serving a motion for order authorizing the extension of time to assume or reject non-residential real property leases for the seven (7) Arby's restaurants operated by the Debtor.

d. Efforts to increase sales, including implementing marketing strategies that would open new income streams and expand the Debtor's current market share.

e. The Debtor is paying its post-petition obligations as they come due.

13. Once the Debtor retained new Chapter 11 counsel on June 24, 2011, the Debtor and its counsel have remained in constant communication with the Debtor's creditors to keep them properly advised of the pendency of the Chapter 11 case and of major developments. The Debtor has responded, and will continue to respond, to inquiries from creditors regarding the status and developments of this Chapter 11 case. At all possible opportunities, creditors and parties in interest have been provided with all information regarding the Debtor's reorganization efforts.

14. The Debtor and its counsel are in the process of completing an exhaustive analysis of the financial performance of each restaurant to determine appropriate actions to insure future profitability. ///

15.     The Debtor is currently investigating the propriety of bringing an action against AFT, including, but not limited to, breach of the various License Agreements between the Debtor and AFT. The Debtor and its counsel need additional time to evaluate these claims and to work with AFT on a possible settlement.

16.     For all these reasons, on behalf of Debtor, I respectfully request this Court's approval of the Motion.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on August 3, 2011, at Buena Park, California.

_/s/  James R. Cunningham_____
James R. Cunningham

| In re<br>**J. C. MANAGEMENT, INC.**<br><br>                                          Debtor. | CHAPTER **11**<br><br>CASE NUMBER:**8:11-bk-16249-ES** |
|---|---|

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2677 North Main St, Ste 800, Santa Ana, CA 92705

The foregoing document described as **MOTION FOR ORDER GRANTING  AN EXTENSION OF THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE ITS PLAN AND DISCLOSURE STATEMENT AND SOLICIT ACCEPTANCES OF A PLAN OF REORGANIZATION PURSUANT TO BANKRUPTCY CODE SECTION 1121(d); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF JAMES R. CUNNINGHAM IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

### I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") – Pursuant to controlling
General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 4, 2011,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

| | |
|---|---|
| George L Baugh | glb3law@yahoo.com, nicole.herring22@yahoo.com;jsrosenbery@gmail.com |
| Robert C Briseno | rbriseno@swlaw.com |
| Michael J Hauser | michael.hauser@usdoj.gov |
| Eric S Pezold | epezold@swlaw.com, dwlewis@swlaw.com |
| Vicki L Schennum | vschennum@msn.com |
| Jeffrey B Smith | jsmith@cgsattys.com |
| Michael G Spector | mgspector@aol.com |
| United States Trustee (SA) | ustpregion16.sa.ecf@usdoj.gov |
| Annie Verdries | verdries@lbbslaw.com |
| Jasmin Yang | jyang@swlaw.com |

### II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):
On **August 4, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

                                        X        Service information continued on attached page

### III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each
person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on, I will serve the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

_____                                       ❏     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 4, 2011 | Lisa Cavender | /s/ Lisa Cavender |
|---|---|---|
| *Date* | *Name* | *Signature* |

IN RE J. C. MANAGEMENT, INC.

Chapter 11 No. 8:10-bk-16249 - SC

<u>Served Via U.S. Mail</u>

<u>Presiding Judge</u>
Honorable Scott C. Clarkson, U S Bankruptcy Judge
United States Bankruptcy Court
Ronald Reagan Federal Building
and United States Courthouse
411 West Fourth Street, Ste. 5130
Santa Ana, California 92701-8000